**Diane GIARDINA, Plaintiff-Appellant,**

v.

**Adele FONTANA, Individually and as Personal Representative of the Estate of Joseph Fontana, Defendant-Appellee.**

**No. 919, Docket 83–9060.**

United States Court of Appeals, Second Circuit.

Argued March 15, 1984.

Decided May 4, 1984.

Edward M. Chikofsky, New York City (Russo, Silverman & Vitaliano, New York City, of counsel), for defendant-appellee.

Jeffrey M. Schwartz, New York City (Leonard M. Simon, P.C., New York City, of counsel), for plaintiff-appellant.

Before FEINBERG, Chief Judge, and MANSFIELD and MESKILL, Circuit Judges.

FEINBERG, Chief Judge:

This case requires us to decide whether the district court erred in abstaining from exercising jurisdiction over a claim for relief that is not directly within the probate exception to diversity jurisdiction and does not involve a controlling or unsettled question of state law, but is on the verge of matters before a state probate court. For reasons given below, we find that the dis-

trict court should not have abstained, and we reverse the judgment of the district court and remand.

## I.

Appellant Diane Giardina alleged the following in the complaint that is the subject of this appeal. She is the natural daughter of the late Joseph Fontana, who died intestate in January 1981. Appellee Adele Fontana is Diane's natural mother and the personal representative of Joseph Fontana's estate, which is the subject of proceedings in the Probate Division of the Circuit Court for Pinellas County, Florida. Two sons of Adele and Joseph Fontana, Raymond and Joseph, also survived the decedent.

According to the complaint, approximately three months after her father died, Giardina executed in New York an assignment of her entire interest in his estate to her mother. At the time, Giardina was emotionally upset over her father's death and her separation and pending divorce from her husband. According to affidavits submitted by Giardina, Fontana telephoned Giardina in New York from Florida almost daily during the three months prior to the assignment and misled her substantially as to the size of the estate. Her brother Raymond then traveled to New York at Fontana's specific request, arrived without notice at Giardina's home with the assignment and induced Giardina to accompany him to a notary public and to execute the assignment. Raymond then went back to Florida without even leaving a copy of the document with Giardina. The complaint further alleges that Giardina received no consideration for executing the assignment; she was also told by her mother that her two brothers would execute similar assignments and that eventually the remainder of the estate would be shared by all three children. However, her two brothers did not execute such assignments, and her mother transferred a substantial portion of the assets received from her father's estate to her brother Raymond.

Giardina claims that her assignment was obtained by undue influence and fraud. Initially, she filed a complaint in June 1982 in the Eastern District of New York against her mother individually and as personal representative of the estate. Jurisdiction was based on diversity; the complaint alleged that the amount in controversy exceeded $10,000 and that Giardina is a New York citizen and her mother is a citizen of Florida. Giardina sought the following relief: (1) a declaration that the assignment was null and void and/or its rescission; (2) an accounting of all property received by Fontana that would rightfully have become Giardina's had she not executed the assignment; and (3) a declaration of a constructive trust in her favor with regard to her rightful share of any property transferred to Fontana.

The district court, Charles P. Sifton, J., dismissed the initial complaint in February 1983 because of the pending probate proceedings in Florida. The judge held that the claims for rescission, accounting and constructive trust were essentially probate matters and that the federal district court lacked subject matter jurisdiction under the probate exception to diversity jurisdiction. He also construed the complaint as possibly making out some kind of personal tort claim, such as fraudulent deprivation of an interest in an estate or intentional interference with an inheritance or gift, that could be separated from the administration of the estate. He found that the district court could exercise jurisdiction over such a claim, but he abstained from exercising jurisdiction, reasoning that "the cause of action arises on the verge of a matter in which states have an especially strong interest .[and] well developed competence," citing *Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel*, 490 F.2d 509 (2d Cir. 1973).

While the motion to dismiss the initial complaint was pending in the district court, Giardina filed a petition in the Florida probate court, which set forth essentially the same allegations and which the probate court treated as an action to revoke the assignment based on fraud and duress. In

**1050**

March 1983, the probate court held that it did not have jurisdiction over the petition and dismissed it without prejudice to an action in a Florida court of general jurisdiction.

After the Florida probate court dismissed her petition, Giardina returned to the district court in New York; in May 1983, she moved to reargue and vacate the dismissal of her first complaint. The district judge denied the motion in September 1983. Meanwhile, during the pendency of that motion, Giardina filed a second complaint in July 1983 in the district court that was substantially the same as her first complaint. It claimed the assignment had been procured by undue influence and fraud, and it sought the same relief as the first complaint did, along with damages equal to the share of the estate due her after the voiding of the assignment and the requested accounting. Judge Sifton's dismissal of the second complaint in November 1983 is the subject of this appeal.

In dismissing the second complaint, the judge held that one branch of the relief sought, rescission, was not directly within the probate exception, but that it was "so intertwined with the matters before the Probate Court, that abstention in favor of the State is appropriate, taking into account what has been said concerning inconvenience to the New York plaintiff and her fears concerning the lack of a favorable reception in the State Courts for someone from outside Florida." Judge Sifton implied that the other relief sought—an accounting, the imposition of a constructive trust and damages—all fell squarely within the probate exception, so that the district court did not have subject matter jurisdiction over them. Because Giardina was obligated to pursue in Florida her interests in the ongoing probate litigation, the district judge apparently believed it appropriate to require her also to pursue the intertwined rescission action in Florida, albeit in a court of general jurisdiction, not the probate court. We are informed by counsel that in December 1983, during the pendency of this appeal, Giardina filed an action to revoke the assignment in a Florida court of general jurisdiction solely to preserve her rights should she be unsuccessful in this appeal.

## II.

▮ It is apparent that the district court could have exercised subject matter jurisdiction over the most substantial part of Giardina's action had it wanted to. The heart of Giardina's complaint was her allegation that the assignment of her interest in her deceased father's estate was obtained by undue influence and fraud. This is essentially a common law tort action. The principal relief requested was a declaratory judgment that the assignment was null and void and/or a rescission of the assignment. This relief could be granted without in any way interfering with the probate proceedings in Florida or the estate being administered. Indeed, the claim was not only cognizable in an appropriate court of general jurisdiction, but the probate court held that the claim was not within its own jurisdiction. The district court was thus correct in concluding that this branch of relief did not fall within the probate exception to diversity jurisdiction. *Waterman v. Canal-Louisiana Bank & Trust Co.*, 215 U.S. 33, 43–46, 30 S.Ct. 10, 12–13, 54 L.Ed. 80 (1909); *Lamberg v. Callahan*, 455 F.2d 1213, 1216–17 (2d Cir. 1972); see 13 Wright, Miller & Cooper, Federal Practice and Procedure § 3610 (1975); *Dragan v. Miller*, 679 F.2d 712 (7th Cir.1982) (Posner, J.) (thoughtful analysis of contours of probate exception), 459 U.S. 1017 cert. denied, 103 S.Ct. 378, 74 L.Ed.2d 511 (1982).

▮ As noted earlier, Giardina also sought an accounting and the imposition of a constructive trust with respect to property received by Adele Fontana from the estate of her late husband. To the extent any such property was held by Fontana as administrator of the estate and was still subject to probate proceedings, the district court was correct in concluding that requiring an accounting or imposing a constructive trust would interfere with the Florida

probate court's control and disposition of the same property. The district court would not have jurisdiction to grant relief of this kind. *Markham v. Allen,* 326 U.S. 490, 494, 66 S.Ct. 296, 298, 90 L.Ed. 256 (1946); 13 Wright, Miller & Cooper, supra, at § 3610.

The complaint can be interpreted, however, to request an accounting and imposition of a constructive trust only as to property that has been distributed to Fontana as a legatee and is therefore no longer subject to the jurisdiction of the probate court. The district court would have power to grant this type of equitable relief. By requesting such relief, Giardina apparently was attempting to protect fully any interest she has in the estate. If she were to obtain a favorable declaration or rescission of the assignment from the district court before the probate proceedings are complete, she could file the district court's judgment with the probate court, which would have to accord the judgment full faith and credit and distribute to Giardina rather than to Fontana whatever it determined to be Giardina's share in the estate. If, on the other hand, the probate court had approved a final accounting and distributed the entire estate prior to a favorable judgment by the district court, Giardina would need the accounting and constructive trust to recover her property from Fontana.

We do not, of course, have to determine at this stage of the litigation the full extent of the relief the district court is empowered to grant. We can decide that subject matter jurisdiction exists as to the underlying claim and some of the relief requested, leaving to the district court in the first instance the opportunity to exercise its discretion in fashioning appropriate relief and possibly avoiding the need to decide whether it has jurisdiction to grant certain types of relief.

### III.

We now turn to the difficult question presented by this case, whether the district court erred in abstaining from deciding the validity of the assignment. Fontana argues that the issue was directly related to and intertwined with matters before the probate court and that this gave the district court discretion to abstain, citing *Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel,* supra, and two decisions from other circuits, *Rice v. Rice Foundation,* 610 F.2d 471 (7th Cir.1979), and *Bassler v. Arrowood,* 500 F.2d 138 (8th Cir.1974), cert. denied, 419 U.S. 1116, 95 S.Ct. 796, 42 L.Ed.2d 815 (1975).

In *Phillips, Nizer,* we stated:

[T]here is particularly strong reason for abstention in cases which, though not within the exceptions for matters of probate and administration or matrimony and custody actions, are on the verge, since like those within the exception, they raise issues "in which the states have an especially strong interest and a well-developed competence for dealing with them."

490 F.2d at 516. *Phillips, Nizer* involved "exploring a thicket of state decisional law." Id. Indeed the court expressly distinguished *Beach v. Rome Trust Co.,* 269 F.2d 367 (2d Cir.1959), as "not to the contrary since that case involved '[n]o controlling or obscure question of state law.'" *Phillips, Nizer,* 490 F.2d at 516. The claim of undue influence and fraud in obtaining the assignment in the case before us is a simple and largely factual question involving well-settled principles of state law. It is a garden variety type in federal diversity jurisdiction, and it neither involves a "controlling or obscure question of state law" nor requires special state expertise. In fact, this case is very similar to *Beach,* in which a testamentary beneficiary asserted various claims against a trustee, some of which fell within the probate exception and some of which did not. In reversing the district court's abstention as to the latter, this court stated:

In support of [the district judge's] power to abstain we are told only that the Surrogates' Courts commonly handle such questions. Of course they do; but so do the federal courts. No controlling or obscure question of state law is present-

# 1052

ed on this complaint; and no specialized executive regulatory agency is concerned.

*Beach,* 269 F.2d at 374. See *Lamberg v. Callahan,* supra, 455 F.2d at 1216.

We have already indicated that Giardina's claim is severable from the trust administration in Florida, does not involve any unsettled question of state law and does not require any special state expertise to resolve. Indeed, enough of the events leading to execution of the assignment took place in New York to support a strong argument that New York rather than Florida law should be applied to determine its validity. Nevertheless, acknowledging that the states have a strong interest and special competence in handling estates not shared by federal judges, it can be argued that this interest and competence extends to the entire proceedings concerning an estate, including intertwined issues and claims, even though the latter technically could be severed and decided by a federal court. The argument would be appealing here had the Florida probate court not held that it had no jurisdiction to adjudicate Giardina's fraud and undue influence claim. By relegating Giardina to a Florida court of general jurisdiction, the probate court undermined the argument that the claim falls within the state's special interest and competence in handling probate matters. See *Dragan v. Miller,* supra, 679 F.2d at 714–15; *Lamberg v. Callahan,* supra, 455 F.2d at 1216. Moreover, the situation here is not an attempt to utilize the federal courts in the middle of complicated state proceedings to litigate issues involved in those proceedings, as in *Rice v. Rice Foundation,* supra, and *Bassler v. Arrowood,* supra, cases relied on by Fontana. Here, in contrast, except for the proceedings in probate court, where Giardina unsuccessfully sought to litigate her main claim, and the fact that Giardina took the prudent step of filing her complaint in the Florida court of general jurisdiction during this appeal, there is no litigation going on in the Florida courts related to this action. See *Fay v. Fitzgerald,* 478 F.2d 181, 184 n. 2 (2d Cir.1973).

■ Even were we tempted to extend *Phillips, Nizer* to cover the facts of this case, we believe that recent Supreme Court decisions strongly suggest that we should not. In *Phillips, Nizer,* 490 F.2d at 516, we recognized that "the expansive language used thirty years ago" in *Meredith v. Winter Haven,* 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943), ran counter to the result reached in *Phillips, Nizer,* but at the time we read the more recent trend of Supreme Court cases as increasingly tolerant of abstention. Since *Phillips, Nizer,* the Supreme Court has decided *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) and *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), which identify three categories of cases in which abstention is proper and which emphasize that abstention is the exception, not the rule. Outside of these three categories,[1] the district courts have "the virtually unflagging obligation ... to exercise the jurisdiction given them." *Colorado,* 424 U.S. at 817, 96 S.Ct. at 1246. However, *Colorado* identified one additional exception outside of the abstention area: "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation'" permit a district court to decline to exercise its jurisdiction in favor of concurrent state proceedings in "exceptional circumstances." Id. at 817–18, 96 S.Ct. at 1246. This "exceptional circumstances" test was reaffirmed and elaborated in *Moses H. Cone,* 460 U.S. at 16–18, 103 S.Ct. at 937–38.

---

**1.** Roughly, the three categories of abstention are: (1) avoiding a federal constitutional issue by seeking a state determination of state law; (2) deferring to state resolution of difficult state law questions that involve important public policy or where federal review would be disruptive of state regulation or administration; and (3) declining to restrain state criminal proceedings, collection of state taxes and the like. See *Colorado River Water Conservation District v. United States,* 424 U.S. at 814–16, 96 S.Ct. at 1244–45.

Giardina's fraud and undue influence claim does not fall into one of the three enumerated abstention categories. See note 1 supra. Without needing to decide what the situation would be had Giardina's claim been within the jurisdiction of the Florida probate court, we can readily conclude that there is nothing exceptional about her claim once the probate court determined that it would have to be brought in a court of general jurisdiction. *Moses H. Cone,* 460 U.S. at 19–26, 103 S.Ct. at 939–42, identifies five factors to be considered in deciding whether exceptional circumstances are present: (1) assumption by either court of jurisdiction over a res or property, (2) convenience to the parties of one forum over the other, (3) avoidance of piecemeal litigation, (4) the order in which jurisdiction was obtained by the concurrent forums and (5) whether federal or state law provides the rule of decision on the merits. With respect to factors (1) and (3), the Florida court of general jurisdiction stands in no better position than the federal district court. Factor (2) is equivocal: the probate proceeding and the estate are in Florida, but it appears that most of the events leading to the assignment took place in New York. The fourth factor favors federal jurisdiction. While the probate proceeding antedated Giardina's complaints in federal district court, the probate court refused to hear her claim. She filed and pursued her complaints in the federal district court before taking the defensive step of also filing it in the Florida court of general jurisdiction. As for the fifth factor, the governing law, obviously state law will provide the rule of decision because this is a diversity case, but it may well be that New York rather than Florida law applies. In any event, this factor has more influence when a federal rule of decision is involved; only "in some rare circumstances [may] the presence of state-law issues ... weigh in favor of ... surrender" of federal jurisdiction. *Moses H. Cone,* 460 U.S. at 26, 103 S.Ct. at 942. Certainly, application of these factors, singly or together, does not lead to the conclusion that exceptional circumstances exist in this case.

The lack of exceptional circumstances thus strongly suggests that it was error to abstain here. This conclusion is buttressed by the peculiar procedural maneuvers indulged in by appellee. Fontana apparently successfully argued to the district court that Giardina's claim fell within the probate exception to diversity jurisdiction and then successfully argued to the Florida probate court that it did not have jurisdiction because the claim was not a probate matter. We do not know why Judge Sifton did not attach more weight to this fact; we find that it almost makes out exceptional circumstances for keeping the case in the district court.

We conclude that the district court erred in declining to exercise its otherwise properly invoked diversity jurisdiction. We reach this conclusion with some reluctance in view of the increasing caseload in the federal courts. Cf. *Thermtron Products, Inc. v. Hermansdorfer,* 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976). We are acutely aware that there is no longer persuasive justification for diversity jurisdiction, see *American Institute of Chemical Engineers v. Reber-Friel Co.,* 682 F.2d 382, 392 (2d Cir.1982) (Feinberg, Ch.J., concurring), but as long as it exists, appellant has a right to invoke it and we have a duty to respect that right. Moreover, we are loath to overturn an exercise of discretion by an able district judge. But in view of the record before us and what we regard as the most relevant precedents, we do not think we have any choice.

The judgment of the district court is reversed and the case is remanded for further proceedings consistent with this opinion. Appellee's request for an award of costs and attorneys' fees in defending this appeal is, of course, denied.